UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RODNEY ARMSTEAD,

   Plaintiff,

     v.

SALLY JEWELL,

   Defendant.

Civil Action No. 12-1110 (CKK)

**MEMORANDUM OPINION**
(August 5, 2013)

Plaintiff Rodney Armstead filed suit against Sally Jewell[1] in her official capacity as the Secretary of the Interior, alleging he was not selected for a position as an Engineering Equipment Operator for the National Park Service on account of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Presently before the Court is the Defendant's [13] Motion to Dismiss or, Alternatively, for Summary Judgment. The Defendant alleges the Plaintiff failed to initiate counseling with an equal employment opportunity counselor within forty-five days of when he reasonably suspected that he had been the victim of discrimination, and thus failed to exhaust his administrative remedies. Upon consideration of the pleadings,[2] the relevant legal authorities, and the summary judgment record, the Court agrees that the Plaintiff failed to exhaust his administrative remedies before filing suit. Accordingly, the Defendant is entitled to summary judgment.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Sally Jewell for Kenneth Salazar as the proper defendant in this action.

[2] Def.'s Mot., ECF No. [13]; Pl.'s Opp'n, ECF No. [15]; Def.'s Reply, ECF Nos. [17].

## I. BACKGROUND

For purposes of this motion, the Defendant, and thus the Court, presumes as true the well-pleaded factual allegations in the Complaint. The Plaintiff, an African-American male, is an employee of the National Park Service, part of the Department of the Interior. Compl., ECF No. [1], ¶ 1. The Plaintiff was initially hired as a maintenance worker for the National Park Service in May 2008, a position which the Plaintiff continued to occupy as of the filing of the Complaint. *Id.* at ¶ 12. On August 14, 2008, the Plaintiff applied for one of two advertised vacancies for Engineering Equipment Operators. *Id.* at ¶¶ 13-14. Six of the ten individuals that applied for the vacancies, including the Plaintiff, received interviews and underwent field assessments. *Id.* at ¶ 15. James Burrell, and African-American male, and Stephen O'Connor, a Caucasian male, were selected to fill the vacancies. *Id.* at ¶ 20. The Defendant learned on or about October 8, 2008, both that he was not selected and that Mr. Burrell and Mr. O'Connor had been selected. Def.'s Stmt. ¶ 3; Pl.'s Ex. D (Ltr. S. Robinson to R. Armstead).[3]

Mr. O'Connor commenced working as an Engineering Equipment Operator in early 2009. Def.'s Stmt. ¶ 4. "Immediately after Mr. O'Connor begin [sic] in the position, it became apparent that he did not know how to operate heavy equipment." Def.'s Ex. A (EEO Report of Investig.) at 29 (Pl.'s Compl. of Discrimination). "A few months after the selections were made, Plaintiff observed O'Connor flip an asphalt roller." *Id.* Compl. ¶ 29; *see also* EEO Report of Investig. at 64 ("I started asking questions when I saw him flip the asphalt roller and I was told that before this he was operating a snow plow and damaged a guard rail on a road in the park.").

---

[3] The EEO Report of Investigation indicates that the Plaintiff was informed that he was not selected and that Mr. Burrell and Mr. O'Connor were selected for the vacancies on November 7, 2008. Def.'s Ex. A (EEO Report of Investig.) at 29. However, the parties agree that the Plaintiff was actually informed on October 9, 2008, Pl.'s Resp. Stmt. ¶ 3, therefore the Court utilizes the date agreed upon by the parties.

At some point Mr. O'Connor also struck and damaged building in the maintenance yard while operating heavy machinery. Compl. ¶ 30. "It was then that [the Plaintiff] began to question how Mr. O'Connor got the job and if he was even qualified. [The Plaintiff] filed a Freedom of Information Act request to get the answers." EEO Report of Investig. at 19 (Pl.'s Compl. of Discrimination). The Plaintiff submitted a Freedom of Information Act request to the National Park Service on May 13, 2010, seeking all records regarding the Engineering Equipment Operator vacancies. Def.'s Ex. B (5/13/2010 FOIA Request); Pl.'s Ex. C (Armstead Aff.) ¶¶ 1, 4. The National Park Service produced a number of documents in response to the request, but the Plaintiff indicates that with respect to Mr. O'Connor, the Plaintiff only received copies of Mr. O'Connor resume and driver's license. Armstead Aff. ¶ 5. The Plaintiff appealed the agency's response to his FOIA request on November 1, 2010, but the Plaintiff does not indicate what, if any, response he received to his appeal. Pl.'s Ex. G at 2-3.

On or about May 3, 2011, Mr. Burrell relayed to the Plaintiff a conversation between Mr. Burrell and Oscar Goodman, one of the selecting officials for the Engineering Equipment Operator positions. Compl. ¶ 31. Mr. Goodman reportedly indicated that Cindy Cox, the approving official for the selection process, informed Mr. Goodman that she wanted two Caucasians hired to fill the vacancies. *Id.* at ¶ 32. Mr. Goodman allegedly threatened to resign unless Mr. Burrell was selected for one of the vacancies. *Id.* at ¶ 33. Mr. Burrell also told the Plaintiff that Mr. O'Connor had purportedly told another applicant for the Engineering Equipment Operator vacancies that he (Mr. O'Connor) informed the selection panel that he was not qualified for the position. *Id.* at ¶ 34. The Plaintiff contacted an Equal Employment Official for first time on June 1, 2011, filed a formal complaint of discrimination on July 12, 2011, and ultimately filed suit on July 6, 2012. Compl. ¶¶ 38-39.

## II.  LEGAL STANDARD

The Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6), or in the alternative, for summary judgment, on the grounds the Plaintiff failed to exhaust his administrative remedies before filing suit.  The United States Court of Appeals for the District of Columbia Circuit has clarified that "Title VII's exhaustion requirements are not jurisdictional," therefore Rule 12(b)(1) is in applicable.  *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011).  Furthermore, Rule 12(d) provides "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]."  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).  Here, both parties rely substantially on documents that are not incorporated by reference into the Complaint, or which the Complaint necessarily relies, such as the Report of Investigation compiled by the Equal Employment Opportunity Investigator for the Department of the Interior.  Therefore, the Court shall treat Defendant's motion to dismiss as a motion for summary judgment.  *Colbert v. Potter*, 471 F.3d 158, 167-68 (D.C. Cir. 2006).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).  When considering a motion

for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

### III. DISCUSSION

"An aggrieved person must initiate contact with a[n] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If counseling does not resolve the issue, the individual may file a formal discrimination complaint. *Id.* § 1614.105(d). The agency must conduct "an impartial and appropriate investigation of the complaint," after which the complainant may demand a hearing and decision from an administrative judge. *Id.* §§ 1614.106(e)(2), 1614.108(f). The complainant may file suit within 90 days of receipt of the agency's final action on the complaint, or after the complaint has been pending for at least 180 days. *Id.* § 1614.407(a), (d). "Complainants must timely exhaust these administrative remedies before bringing their claims to court." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

By regulation, the 45-day time limit may be tolled in certain circumstances, including if the individual "was not notified of the time limits and was not otherwise aware of them," or "despite due diligence," the individual "was prevented by circumstances beyond his or her control from contacting the counselor within the time limits." *Id.* § 1614.105(a)(2). The Plaintiff argues in this case that a third exception applies in this case, namely that the Plaintiff

5

"did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred."[4]  *Id.*  Under this provision, "the 45–day clock is tolled until the aggrieved employee has a 'reasonable suspicion' that []he has been the victim of discrimination." *Saunders v. Mills*, 842 F. Supp. 2d 284, 291 (D.D.C. 2012).  The Plaintiff cannot wait until "he has direct proof of the allegedly discriminatory actions"; rather, he must contact an EEO counselor "even if he is not in possession of the supportive facts necessary to prosecute a discrimination charge."  *Johnson v. Gonzales*, 479 F.Supp.2d 55, 59 (D.D.C. 2007) (citation omitted).

The Plaintiff argues that he did not know and reasonably should not have known that his non-selection was discriminatory until May 3, 2011, at which point he timely initiated counseling.  Pl.'s Opp'n at 8.  Courts in this Circuit have routinely held that an employee reasonably should suspect that there might be discriminatory reasons for his or her non-selection (or non-promotion) upon learning that an individual of a different race (or gender, if applicable) was selected (or promoted).  *E.g.*, *Stewart v. Ashcroft*, 352 F.3d 422, 425-26 (D.C. Cir. 2003); *LaFavors v. Shinseki*, No. 10-1575, 2012 WL 640878, at *3 (D.D.C. Feb. 29, 2012); *Taylor v. Mabus*, 685 F. Supp. 2d 94, 97 (D.D.C. 2010); *Williams v. Munoz*, 106 F. Supp. 2d 40, 43 (D.D.C. 2000); *see also Miller v. Hersman*, 594 F.3d 8, 12 (D.C. Cir. 2010); *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 60 (D.D.C. 2011) (holding plaintiff's "knowledge of the two incidents in question . . . [and that] he had engaged in protected activity . . . suffice[d] to give rise to a reasonable suspicion of retaliation or trigger the duty to investigate"); *Fortune v. Holder*, 767 F. Supp. 2d 116, 121-22 (D.D.C. 2011).  It is undisputed that the Plaintiff learned on or

---

[4] An employee who demonstrates that one of the circumstances set forth in 29 C.F.R. § 1614.105(a)(2) applies "need not separately satisfy the common law standard for equitable tolling."  *Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007).

about October 9, 2008, that he had not been selected for the Engineering Equipment Operator position, and that an African-American male and a Caucasian male had been selected. Thus, the Plaintiff reasonably should have suspected by no later than October 9, 2008, that his non-selection was discriminatory.

The Plaintiff suggests that the selection of Mr. Burrell along with Mr. O'Connor to fill the Engineering Equipment Operator vacancies, "obscured the discriminatory character of the selection process." Pl.'s Opp'n at 13. Mr. Burell's selection does negate the fact that the Plaintiff knew as of October 9, 2008, that the Plaintiff had not been selected for one of the vacancies, but Mr. O'Connor, who is Caucasian, had been selected. Moreover, the Plaintiff suspected by no later than May 2010 that Mr. O'Connor was not qualified for the position. Armstead Decl. ¶¶ 1, 4; EEO Report of Investig. at 19 (noting that after Mr. O'Connor allegedly struck a building in the Maintenance Yard, the Plaintiff "began to question how Mr. O'Connor got the job and if he was even qualified). In other words, in May 2010, the Plaintiff knew that he had not been selected for Engineering Equipment Operator position, and the Plaintiff knew that a Caucasian employee the Plaintiff believed not to be qualified for the position was selected instead. "[T]o toll the 45–day limitation period under regulation 1614.105(a)(2), the plaintiff has a responsibility, when possible, to further investigate a personnel action in order to determine whether the action was discriminatory." *Miller*, 594 F.3d at 12. Despite his suspicions in May 2010, the Plaintiff did not pursue the matter further. Nor did the Plaintiff contact an EEO counselor until over a year later. The Plaintiff reasonably should have known that his non-selection was discriminatory by no later than May 2010, making his June 2011 initial contact with an EEO counselor untimely.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Plaintiff failed to exhaust his administrative remedies before filing suit.  The governing regulations require an employee to initiate contact with an EEO counselor within 45 days of when the employee reasonably suspects that an adverse employment action was discriminatory.  In this case, the Plaintiff knew that he was not selected for one of two Engineering Equipment Operator vacancies, and that a Caucasian male *was* selected for one vacancy on or about October 9, 2008, at which point the Plaintiff should have reasonably suspected that his non-selection was discriminatory.  Furthermore, by his own admission the Plaintiff suspected the Caucasian male was not qualified for the position in May 2010.  Nevertheless, the Plaintiff failed to initiate counseling until June 2011.  The Plaintiff was not entitled to wait until he had direct evidence of discrimination before contacting an EEO counselor.  The Plaintiff failed to initiate counseling within 45 days of when the Plaintiff reasonably should have known his non-selection was discriminatory.  Accordingly, the Plaintiff failed to exhaust his administrative remedies, and the Defendant is entitled to summary judgment.

 */s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE